**REMAND/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-3951-GW(PLAx) | Date | August 20, 2015 |
|---|---|---|---|
| Title | *Veronica Rodriguez v. Swissport USA, Inc., et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Melissa Grant  Harold M. Brody
Ryan H. Wu  Robert A. Escalante
  Kenneth D. Sulzer

PROCEEDINGS: **PLAINTIFF'S MOTION TO REMAND AND FOR ATTORNEYS' FEES AND COSTS FOR IMPROPER REMOVAL [31]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion to Remand is GRANTED. The above-entitled action is remanded to the Los Angeles County Superior Court (BC441173). Plaintiff's request for attorneys' fees is DENIED.

: 25

Initials of Preparer  JG

*Rodriguez v. Swissport USA, Inc.*, Case No. CV-15-3951-GW (PLAx)
Tentative Ruling on Motion to Remand

## I. Background

On July 7, 2010, Veronica Rodriguez ("Plaintiff") filed this action in the Los Angeles Superior Court asserting six claims against Swissport USA, Inc. ("Defendant"), including the failure to provide complete and accurate wage statements in violation of California Labor Code § 226.[1] *See generally* Compl., Docket No. 1-1. Plaintiff filed a First Amended Complaint on August 9, 2010. *See generally* First Am. Compl. ("FAC"), Docket No. 1-3. On April 12, 2013, two subclasses were certified: 1) the Non-Compliant Wage Statement Subclass and 2) the PAGA Wage Statement Subclass. *See* Class Cert. Ruling, Docket No 2-65.

On May 14, 2015, Plaintiff sought leave to file a Second Amended Complaint, which states that "the aggregate amount in controversy for the proposed class action, including monetary damages, restitution and attorneys' fees requested by Plaintiff, is less than five million dollars ($5,000,000), exclusive of interests and costs. Plaintiffs reserve the right to seek a larger amount based upon new and different information resulting from investigation and discovery."[2] *See generally* Mot. for Leave to Amend Compl. at 1, Docket No. 2-168; Proposed Second Am. Compl. ¶ 1, Docket No. 2-169.

Defendant then filed a Notice of Removal on May 26, 2015, after nearly five years of litigation and just weeks before trial. *See* Notice of Removal ¶ 10, Docket No. 1; Mot. to

---

[1] Originally, Plaintiff also named Swissport North America, Inc. ("Swissport North America") as a defendant, *see* FAC, but Swissport North America was subsequently dismissed from the action on August 15, 2011, *see* Stip. & Order Dismissing Def. Swissport North America, Docket No. 1-17.

[2] Although Plaintiff's Complaint and First Amended Complaint also indicated that the amount in controversy was less than $5,000,000 (without reserving the right to seek a larger amount), Plaintiff cannot avoid CAFA jurisdiction by alleging that the total amount in controversy is less than $5,000,000. *See Standard Fire Ins. Co. v. Knowles*, ___ U.S. ___, 133 S. Ct. 1345, 1349-50 (2013) (holding that a CAFA plaintiff who stipulates, prior to certification of the class, to aggregate damages less than $5,000,000 does not remove the case from CAFA's scope). As such, Defendant's argument that it was "entitled to rely on Plaintiff's purportedly good faith allegation that the amount in controversy did not exceed $5 million" is unavailing. *See* Opp'n at 13:20-21, Docket No. 34. Rather, Defendant had the burden to put forward evidence showing that the amount in controversy exceeded $5,000,000, and was obligated to do so within the time periods for removal provided by statute. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("When plaintiffs favor state court and have prepared a complaint . . . that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million.").

1

Remand at 1:3-7, Docket No. 31. Defendant maintains that it was never "required to conduct any . . . investigation into the grounds of removability," but that it "recently did conduct such an investigation, which revealed that the amount in controversy exceeds $5,000,000, exclusive of interests and costs." *See* Notice of Removal ¶¶ 11-12. Plaintiff now moves to remand this action on the grounds that removal was untimely and/or that Defendant waived its right to remove, and seeks attorneys' fees in the amount of $9,500. *See generally* Mot. to Remand, Docket No. 31.

## II. Legal Standard

The right to remove a case to federal court is entirely a creature of statute. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). Ordinarily, it "is presumed that a cause lies outside the limited jurisdiction of federal courts," *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006), and the Ninth Circuit "strictly construe[s] the removal statute against . . . jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). But, as the Supreme Court recently explained, the rule is different in CAFA cases; no "antiremoval presumption attends cases invoking CAFA" because "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, ___ U.S. ___, 135 S. Ct. 547, 554 (2014).

The removal statutes impose both procedural and jurisdictional requirements. 28 U.S.C. § 1447(c); *Gray v. Moore Bus. Forms, Inc.*, 711 F.Supp. 543, 544 (N.D. Cal. 1989) ("A diversity action will be remanded to state court for two reasons: (1) lack of subject matter jurisdiction; and (2) procedural defects in the removal process."). As relevant here, the procedural requirements include two limitations on the time for removal. *See* 28 U.S.C. § 1446(b); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) ("[T]he two periods specified in § 1446(b)(1) and (b)(3) operate as limitations on the right to removal."). Under 28 U.S.C. § 1446(b)(1), a defendant must remove within thirty days of receiving an initial complaint if, *on its face*, the complaint alleges all of the information necessary to establish federal subject matter jurisdiction. *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) ("The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face."); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694-95 (9th Cir. 2005) ("[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, [but] the defendant receives 'a

2

copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b)(3)); *see also Harris*, 425 F.3d at 695 ("[W]e will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper."). (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)).

If the initial pleading is not removable on its face and a defendant has not yet received a document from which removability can be ascertained, a defendant *may* remove at any point after it "discovers, based on its own investigation, that a case is removable." *Roth*, 720 F.3d at 1123 ("[A] defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable."). At the same time, however, "[a] defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so." *Id.* at 1125 (indicating that it is "theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal"). The "theoretical possibility of abusive gamesmanship" is a particular concern in CAFA cases, which "may be removed at any time" rather than only within one year of the commencement of the action (the outer limit on removal in non-CAFA diversity cases). *Id.* at 1126.

### III. Analysis

Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity of citizenship between the parties, (2) the proposed class must have at least 100 members and (3) the amount in controversy must "exceed[ ] the sum or value of $5,000,000." *See* 28 U.S.C. § 1332(d). Defendant concedes Plaintiff's Complaint, First Amended Complaint, and Proposed Second Amended Complaint all revealed the requisite class size. *See* Notice of Removal ¶ 34.

#### A. *Diversity*

In its Opposition, but not in its Notice of Removal, Defendant contends that Plaintiff's failure to affirmatively identify her citizenship means the thirty-day removal periods were never

3

triggered and removal was timely.[3] *See* Opp'n at 12:13-13:2, Docket No. 34. The Court agrees that Defendant had no duty to investigate Plaintiff's citizenship. *See Harris*, 425 F.3d at 695-97. Given that Plaintiff stated that she was a resident of Los Angeles County, California and was employed by Defendant in Los Angeles, California since June 2007, however, Defendant had a sufficient basis on which to assert minimal diversity. *See* Compl. ¶¶ 7, 22, Docket No. 1-1; *see also* Decl. of Veronica Rodriguez ¶ 2, Docket No. 1-65 (indicating that Plaintiff worked for Defendant from approximately June 2007 to May 2010); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile.") (citations omitted). Indeed, Defendant ultimately based its assertion of Plaintiff's citizenship on these facts. *See* Notice of Removal ¶ 19 ("Plaintiff is a citizen of the United States and domiciled in the State of California. As indicated by her job application, work history, complaint, and sworn declaration, Plaintiff has resided in the State of California for at least six years. Residence is *prima facie* evidence of domicile."). As such, whether Defendant's removal of this action was timely hinges on when, if ever, Defendant had notice that the amount in controversy exceeded $5,000,000.

### B. *Amount in Controversy*

Defendant contends it could not ascertain removability until it recently conducted an investigation "which revealed that the amount in controversy exceeds $5,000,000, exclusive of interests and costs." *See* Notice of Removal ¶¶ 11-12. Defendant concluded that the amount in controversy for Plaintiff's wage statement claims for statutory penalties under California Labor Code § 226 alone is $5,158,100;[4] Defendant reached this figure by determining that there were 1,705 class members and multiplying that figure by the statutory cap of $4,000 for each class member. *See id.* ¶¶ 27-30.

A Motion to Compel filed by Plaintiff on November 28, 2012 indicated that the putative

---

[3] With its Opposition, Defendant filed evidentiary objections to the Declaration of Melissa Grant. *See* Docket No. 37. The Court declines to rule on the first objection because it did not rely on the cited evidence in reaching its decision. The Court overrules the second objection.

[4] In addition, Defendant calculated potential recoverable attorneys' fees of 25% of this figure, or $1,289,775, and that the total amount in controversy for Plaintiff's claim for civil penalties under PAGA was $12,832,000. *See* Notice of Removal ¶¶ 30-32, n.5. Plaintiff's claim for civil penalties under PAGA was brought, and certified, as a class claim, and thus could be aggregated with Plaintiff's other class claim to satisfy the amount in controversy. *See Yocupicio v. PAE Grp., LLC*, No. 15-55878, __ F.3d __, 2015 U.S. App. LEXIS 13273, at *6-7, 2015 WL 4568722, at *4 (9th Cir. July 30, 2015) (indicating that PAGA claims brought as representative claims, rather than class claims could not be used to satisfy the CAFA jurisdictional amount).

4

class in this case involved "more than 4,500 employees." *See* Mot. to Compel at 1:14, Docket No. 1-80. Given the $4,000 statutory cap on damages, Defendant easily should have ascertained removability at that point. *See Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *Kuxhausen*, 707 F.3d at 1140 (indicating that a defendant must "apply a reasonable amount of intelligence in ascertaining removability," which includes performing simple multiplication). Moreover, on August 7, 2013, Defendant itself provided an estimate that 1,900 class members belonged to the wage statement subclass. *See* Reply at 10:6-16, Docket No. 39 (citing Docket No. 2-86 at 4, n.3). At the latest, Defendant was on notice of removability upon receipt of a September 5, 2014 class notice report from the third-party administrator indicating that the wage statement subclass consisted of 1,827 class members. *See* Opp'n at 15:17-18; *see also* Decl. of Melissa Grant ¶ 7, Docket No. 31-1.

In addition, Plaintiff points to two prior instances in which Defendant, by its own calculations, represented to the court that Plaintiff's wage statement claim alone exceeded $5,000,000. *See* Mot. to Remand at 10:7-11:8. First, in its Opposition to Plaintiff's Motion for Class Certification, filed on November 28, 2012, Defendant stated that "Plaintiff seeks in excess of ten million dollars" on the wage statement claim alone. *See* Opp'n to Mot. for Class Cert. at 20, Docket No. 1-72. Second, in its Supplemental Brief supporting its Motion to Deny Class Certification, filed on January 17, 2013, Defendant provided an explanation of its calculations showing that the wage statement claims exceeded $20 million, based on the number of class members and the violations at issue:

> The parties estimate that this putative class is roughly 4000-5000 class members. Assuming the Plaintiff seeks the maximum of amount of penalties and argues that [Defendant] is liable for penalties related to the wage statements, [Defendant]'s estimated liability well exceeds $20 million dollars for these violations."

*See* Supp'l Brief in Supp. of Mot. to Deny Class Cert., at 1 n.4, Docket No. 2-15. Strangely, Defendant now argues that calculating the amount in controversy with respect to the wage statement claim in this way – by multiplying the 4,500 putative class members by the $4,000 statutory cap on damages – is "absurd," "untenabl[e,]" "misleading[,] and borders on bad faith" because not all 4,500 putative class members are necessarily members of the wage statement subclass or entitled to $4,000 in statutory penalties. *See* Opp'n at 14:16-17:19. The Court finds

5

Defendant's instant position to be disingenuous, especially given that Defendant's Notice of Removal still relies on the $4,000 statutory maximum to calculate the amount in controversy. *See* Notice of Removal ¶ 29. In any event, given the overall number of putative class members, Plaintiff's affirmative statement that there were 585 wage statement subclass members employed in Los Angeles alone, *see* Docket No. 1-61 at 2:23-24, the availability of attorneys' fees, and Plaintiff's other class claim, Defendant was long ago put on notice of the removability of this action. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (indicating that the CAFA amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation."). Under these circumstances, the Court would find that Defendant failed to timely remove this action. *See Banta v. Am. Med. Response Inc.*, No. CV 11-03586 GAF RZX, 2011 U.S. Dist. LEXIS 77558, at *18-19, 2011 WL 2837642 (C.D. Cal. July 15, 2011) (granting motion to remand because: "It [was] not credible that [the defendants] could not ascertain the amount in controversy until they were told that the plaintiff contended that more than $5 million was at stake. Indeed, the evidence discussed below indicates that [the d]efendants have known for years that the amount in controversy in this case exceeded the CAFA jurisdictional minimum.").

### C. Attorney Fees

Under 28 U.S.C. § 1447(c), an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Requiring the payment of fees and costs is appropriate where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140-41 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, the objective reasonableness of a removal depends on the clarity of the applicable law and whether established law "clearly foreclosed" the arguments in support of removal. *Id.* at 1066-67. Here, although the Court ultimately disagrees with Defendant's position, it does not find Defendant's position objectively unreasonable. Thus, the Court would deny Plaintiff's request

for an award of fees under § 1447(c).

## IV. Conclusion

In sum, the Court would conclude that Defendant's removal is untimely and would remand this action to state court. Because Defendant's removal attempt was not objectively unreasonable, however, the Court would deny Plaintiff's request for fees.